Learned, J.
Subsequently to the decree in this action (in the late court of chancery), a motion was made by Anson House, as the trustee of a certain trust, against Ira Harris, in the supreme court. The motion was denied at special term. The order denying it was affirmed at general term, and was affirmed by the court of appeals, with costs. The judgment of that court was duly made the judgment of this, and it was adjudged that Ira Harris, the respondent, recover of Anson House the sum of three hundred and twenty-one dol *254 lars and eighty-eight cents, as and for his costs ; and that he have execution therefor.
On July 30, 1860, and before the appeal to the gen- ■ eral term, said House had been removed from his office of trustee and John C. Van Epps had been appointed trustee in his place. Van Epps, in fact, carried on both appeals, although his name was not substituted in the proceedings. The fact of the appointment of Van Epps in the place of House was not known to the respondent until after the final judgment aforesaid. The respondent now moves that Van Epps be required to pay the costs, or that an attachment issue.
It may be important to state here that the trust was a trust to receive the rents of lands and the interest on a mortgage; to pay them to two persons during their natural lives, and after their death to divide the estate among the heirs of Haney Van Epps, one of these persons. Both of these persons had died before John C. Van Epps was appointed trustee. And the motion made by House related only to the surplus moneys arising on a foreclosure sale of lands, which Jands had been part of the trust property up to the time of sale.
The trust estate ceased in the land at the death of the survivor of the two persons. The authority to divide among heirs was only a power in trust, the estate vesting in the heirs (1 Rev. Stat., marg. p. 728, et seq., §§ 55, 77, 78, 86). The same rule applies to the avails of the land after the foreclosure.
John C. Van Epps is one of the heirs of Haney Van Epps, and therefore on her death became the absolute owner of his proportionate share of the estate in the land, or of its avails, if it should be sold. There was, .therefore, no express trust as to the property in controversy as to which he could be appointed trustee.
I understand that by section 317 of the Code this judgment for costs, if there were an existing trust estate of which House was trustee, would be really a *255 judgment against that trust estate. The costs would have to be paid out of that trust estate. Whether House or Yan Epps were the trustee would be, in this respect, immaterial. The substituted trustee would be in the same position with the former trustee. Whatever name appeared in the proceedings the judgment would be against the'trust estate, not against the trustee personally.
But before Yan Epps was substituted, the trust had ceased, and he and the other heirs had become entitled to their respective shares of the property, if any existed. He was the absolute owner of his share, free from any trust. He chose, however, to keep up the name of a trust, and to assume himself the character of trustee. How, when a man is the absolute owner of property he cannot escape from his responsibilities by calling himself trustee, or even by obtaining an order of the court appointing him trustee of his own property. There may be good reason why the trustee of an express trust, acting in good faith, should not be liable personally for the costs of an unsuccessful action. But there is no reason why the absolute owner of an alleged claim should escape liability for costs, by calling himself trustee, where no trust exists. The law does not permit the holding of property in trust for one who has the complete beneficial interest therein. And there is no trust necessary or proper where the only thing to be done is to divide land equally among heirs. Yan Epps, therefore, was not trustee for himself, nor was he trustee for the other heirs. He was the owner of his share, actively carrying on a litigation in the name of another for his own benefit and for the benefit of the other heirs, as to their separate interests. The claim was his property (Code, § 321 ; 2 Rev. Stat., marg. p. 619, § 44).
I think the respondent entitled to recover these costs against Yan Epps.
*256 Section 321 of the Code appears to have given once more the remedy by attachment, which had been taken away by Laws of 1847, ch. 390. The order should be, therefore, that Van Epps pay the costs within ten days after service of a copy of the order on him, or show cause at a special term to be therein named, why,an attachment. should not issue. -